James P. Charlton Jr.
PO Box 1188
Haiku, HI, 96708

Email: techguru@byiq.org
Phone: 1-808-213-6136

FILED N THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
29 July 2022 10:00 AM lrs
Pam Hartman Beyer, Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF HAWAII

| | |
|---|---|
| JAMES PAULETT CHARLTON JR, | Case No.: 22-00344 LEK-RT |
| Plaintiff, | |
| vs. | COMPLAINT FOR:<br>I) VIOLATIONS OF SECURITIES ACT OF 1933; |
| AGNES GRIEG A/K/A AGNES CANNON;<br>FIRST HAWAIIAN BANK;<br>BANK OF HAWAII;<br>MAUI LOAN INC.;<br>RICHARD DAN;<br>RICHARD DAN D/B/A KAMAAINA LOAN;<br>RICHARD DAN D/B/A MAUI PAWN SHOP;<br>CAROLYN DAN A/K/A CAROLYN PRINTZ;<br>VALLEY ISLE LOAN LLC;<br>CASE LOMBARDI & PETTIT A LAW CORPORATION;<br>DOES 1-20 | II) BREACH OF CONTRACT;<br>III) ACCOUNT STATED;<br>IV) ACCOUNTING;<br>V) ALTER EGO LIABILITY;<br>VI) FRAUD IN THE INDUCEMENT;<br>VII) BREACH OF FIDUCIARY DUTY<br><br>JURY TRIAL REQUESTED |
| Defendants | |

I.   **The Parties to this Complaint**

  **I. Plaintiff**

1.   James Paulett Charlton Jr resides in Haiku, Hawaii in the County of Maui and is successor in interest to all claims and causes of action formerly held by Ms. Nanette Guillory with respect to the various defendants.

**II. Defendants**

1. AGNES GRIEG A/K/A AGNES CANNON, an individual, is currently working as an officer for defendant FIRST HAWAIIAN BANK with a business address of 20 West Kaahumanu Avenue Kahului HI 96732 with a business telephone number of (808) 877-2311. GRIEG was previously employed by defendant BANK OF HAWAII.

2. FIRST HAWAIIAN BANK, a corporation, is the current employer of defendant GREIG and has a business address of 20 West Kaahumanu Avenue Kahului HI 96732 with a business telephone number of (808) 877-2311.

3. BANK OF HAWAII, a corporation, is the former employer of defendant GREIG and has a business address of 11 E Kamehameha Ave, Kahului, HI 96732 with a business telephone number of (808) 871-8250.

4. MAUI LOAN INC., a corporation, is party, as "borrower", to those certain loan securities documents described later in this complaint and is wholly owned and operated by

defendants Richard and Carolyn Dan and has a business address of 98 North Market Street Wailuku, HI, with a business telephone number of (808) 242-5555.

5. RICHARD DAN, an individual, is an owner of defendant Maui Loan Inc. and signed those certain loan securities documents described later in this complaint, in his capacity as "president" in which defendant Maui Loan Inc is party as "borrower." RICHARD DAN has a business address of 98 North Market Street Wailuku, HI, with a business telephone number of (808) 242-5555 and is married to defendant CAROLYN DAN.

6. RICHARD DAN D/B/A KAMAAINA LOAN, a sole proprietorship, is operated by defendant RICHARD DAN at the same address and phone number as defendant MAUI LOAN INC.

7. RICHARD DAN D/B/A MAUI PAWN SHOP, a sole proprietorship, is operated by defendant RICHARD DAN at the same address as defendant MAUI LOAN INC with a phone number of (808) 877-0676.

8. CAROLYN DAN A/K/A CAROLYN PRINTZ – an individual, is an owner of defendant Maui Loan Inc. and is listed in various business filings with the State of Hawaii as among "incorporator", "director", "vice president", or "president" of Maui Loan Inc. CAROLYN DAN has a business address of 98 North Market Street Wailuku, HI, with a business telephone number of (808) 242-5555 and is married to defendant RICHARD

DAN.

9. VALLEY ISLE LOAN LLC — a Hawaii corporation, is owned and operated by defendant CAROLYN DAN A/K/A CAROLYN PRINTZ and has a business address of 98 North Market Street Wailuku, HI, with a business telephone number of (808) 281-8181.

10. CASE LOMBARDI & PETTIT A LAW CORPORATION, among other things, prepared and transmitted, via US Mail and other means, those certain loan securities documents described later in this complaint.

11. Does 1-20 are parties whose names and roles are currently unknown to Plaintiff and this complaint will be amended as their names, actions, and roles are discovered during the course of prosecuting this complaint.

## II.  Basis for Jurisdiction

This complaint is brought under 15 U.S. Code § 77a, et seq (the "Securities Act of 1933"), which creates rights of action whereby an individual may sue to recover principal and interest for investments in unregistered securities.

As such, original jurisdiction vests with this Court under 28 U.S. Code §1333.  As shown later in this complaint, this Court also has supplemental jurisdiction over the remaining claims and causes of action under 28 U.S. Code §1367 due to the fact that those claims are so related to the Securities Act of 1933 claims that they form part of the same case or controversy

under Article III of the United States Constitution.

**III. Statement of Facts giving rise to the various Claims**

1) Facts that are presented in the various documents attached to the instant complaint are treated as the true for the purpose of this complaint, subject to later determination by the finder of fact at trial in this matter. With few exceptions as detailed later in this complaint, such facts represent admissions of the drafter of those documents, and the parties actually participating in the drafting of those documents.

2) All remaining facts herein are stated on information and belief, subject to discovery and witness testimony in the instant action.

3) Nanette Guillory, the original lender on the "loan securities documents" at issue in this complaint, became acquainted with Defendant GRIEG through Nanette's mother, Ms. Roxanne Wall.

4) Unbeknownst to Ms. Guillory and her mother, GRIEG was managing and participating in a criminal enterprise which preyed upon the cash reserves and other assets of unsophisticated and unsuspecting single women such as Ms. Guillory and her mother Ms. Wall.

5) GRIEG represented herself as an employee and officer of, at first, defendant BANK OF HAWAII, and later in the relationship with Ms. Guillory, as an employee and officer of defendant

FIRST HAWAIIAN BANK, where she remains to this day.

6) GRIEG introduced herself to Ms. Wall at church, where she learned that Ms. Wall had investible cash reserves and a substantial monthly royalty stream from the operation of oil and gas wells in the vicinity of Louisiana and Texas.

7) GRIEG initially recruited Ms. Wall to invest her cash reserves into various insured offerings from Bank of Hawaii and First Hawaiian Bank.

8) GREIG held herself out to be the "private banker" for Ms. Wall and subsequently for Ms. Guillory.

9) GRIEG abused her position of trust and fiduciary responsibilities and subsequently directed Ms. Wall to divert funds from those insured bank accounts into "outside investments," such as private loans, which GRIEG represented were safe but offered a much higher rate of return than investments in those banks.

10) GRIEG's immediate supervisor at Bank of Hawaii had full knowledge of these "outside investments" and condoned and vouched for them as well.

11) GRIEG's immediate supervisor moved employment with GRIEG when she transferred her employment and officer relationship to First Hawaiian Bank and became her supervisor at GREIG's new role.

12) Unbeknownst to Ms. Guillory and Ms. Wall, those "outside

COMPLAINT FOR: VIOLATIONS OF SECURITIES ACT OF 1933-ET AL - 5

investments" were predominantly other potential customers of the bank employing GRIEG at that time, and for which those banks had already declined to make loans or other funding available. In short, those "outside investments" were not bankable due to risk and other regulatory criteria.

13) GRIEG and her supervisor saw an opportunity to play "match maker", and act as a broker for deals between bank clients who wanted money, and bank clients who had liquid funds, in what can only be described as a criminal enterprise.

14) GRIEG has operated such criminal enterprise for over two decades, abusing the trust her clients vested in those banking institutions employing her, with full knowledge and support of her immediate supervisor, and other staff and officers of those banks.

15) GRIEG, in her self-declared role as "private banker", for Ms. Guillory and Ms. Wall, among her other client prey, signed documents and endorsed checks for those clients, directing funds into various accounts and investments at her own whim with no accounting nor accountability to her clients.

16) GREIG even had the client's keys to Ms. Wall's safe deposit box and would shuttle documents and other valuables from Ms. Wall to those safe deposit boxes.

...

17) Ms. Guillory moved to become resident of Maui in 1978,

possessing only a high school education and advanced training in the performing arts of ballet.  She became a ballet teacher, teaching in Hana, where she resided, and at the Maui Arts and Cultural Center in Kahului with the Maui Academy of Performing Arts.

**18)**  Ms. Guillory's mother, Roxanne Wall, moved to become resident of Maui in the early 1980's.

**19)**  GRIEG wormed her way into the personal lives of Ms. Wall and Ms. Guillory and eventually attended their private family events and had unlimited access to their homes without invitation.

**20)**  During the course of the relationship with GRIEG, Ms. Guillory came to learn that GRIED considered defendant CAROLYN DAN to be one of GRIEG's closest and best friends.

**21)**  From late 2015 until early 2021 Ms. Guillory was home-bound and mostly bed-ridden due to a mysterious illness and she was incapable of managing her financial affairs.

**22)**  In July 2021, Ms. Guillory sent demand for payment and a compromise settlement offer to defendants MAUI LOAN INC. and RICHARD DAN.

**23)**  In June 2022, Ms. Guillory entered into discussions with Plaintiff Charlton regarding the prosecution of her claims and causes of action.  During the course of those discussions and related research, she came to learn that she was deprived of

her rights under the Securities Act of 1933 by the defendants, and each of them, failure to (a) register the securities, (b) provide a prospectus for those securities, and other representations made by GRIEG in breach of her role as a officer and fiduciary of the bank defendants.

**24)** Attached hereto as Exhibit 1 is a true and accurate copy of the "Promissory Note."

**25)** Attached hereto as Exhibit 2 is a true and accurate copy of the "Security Agreement."

**26)** Attached hereto as Exhibit 3 is a true and accurate copy of the "Mutual Settlement and Release."

**27)** Attached hereto as Exhibit 4 is a true and accurate copy of the "2010 UCC1 Filing."

**28)** Attached hereto as Exhibit 5 is a true and accurate copy of the Post Sale Transmittal by Defendant CASE LOMBARDI.

**29)** Attached hereto as Exhibit 6 is a true and accurate copy of the "Statement of Account dated July 2021."

**30)** Attached hereto as Exhibit 7 is a true and accurate copy of the "2021 UCC1 filing."

**31)** Attached hereto as Exhibit 8 is a true and accurate copy of the "2010 Letter from Guillory to Dan."

**32)** Attached hereto as Exhibit 9 is a true and accurate copy of the "2022 UCC3 for 2021" as transmitted the State of Hawaii for recordation.  This exhibit will be amended once the

endorsed filed copy is available from the State of Hawaii.

**33)**  Attached hereto as Exhibit 10 is a true and accurate copy

of the "2022 UCC3 for 2010" as transmitted the State of Hawaii

for recordation.  This exhibit will be amended once the

endorsed filed copy is available from the State of Hawaii.

**34)**  Attached hereto as Exhibit 11 is a true and accurate copy

of the "Assignment, Grant, Sale, Quitclaim, Transfer and

Conveyance" by which Charlton received the rights to prosecute

the claims and causes of action in the immediate complaint.

**IV.  Statement of Claims and Causes of Action**

I. VIOLATIONS OF SECURITIES ACT OF 1933

1. The securities agreements in Exhibits 1 and 2 are

unregistered securities which constitute a private placement

which was never offered to the public.

2. Not one of the named defendants appears to be registered or

licensed as a securities broker.

3. Each of the named defendants participated in a scheme to

promote, create and sell those unregistered securities in a

private placement to an unaccredited investor, Ms. Guillory.

4. Ms. Guillory did not participate in the drafting of the

securities agreements, having placed her trust and her money

with defendant GRIEG.

5. Prior to the execution of those securities agreements, they

were prepared and transmitted via email and USMAIL by various

defendants, including, but not limited to CASE LOMBARDI &
PETTIT A LAW CORPORATION, GREIG, AND FIRST HAWAIIAN BANK.

6. The information transmitted with those securities
agreements may be construed as the only "prospectus" offered
and fully omit any facts necessary for any informed investment
decision.

7. Subsequent to the execution of those securities agreements,
they were transmitted via email and USMAIL by various
defendants, including, but not limited to CASE LOMBARDI &
PETTIT A LAW CORPORATION, GREIG, AND FIRST HAWAIIAN BANK.  See
Exhibit 5.

8. Defendant CASE LOMBARDI also transmitted the UCC-1 for the
unregistered securities to the State of Hawaii for recordation.

9. Those acts, in violation of the Securities Act of 1933,
contributed directly to the loss of Ms. Guillory's investment
with defendant MAUI LOAN INC and its alter-egos.


## II. BREACH OF CONTRACT

1. Ms. Guillory, as lender, entered into the following three
agreements with the defendant MAUI LOAN INC. and its alter-egos
(a) "Mutual Settlement and Release Agreement" dated effective
October 1, 2009, (b) "Promissory Note" dated effective November
2009, and (c) "Security Agreement" dated effective November
2009;

2. Ms. Guillory has performed all duties and obligations required of her under those agreements.  Plaintiff Charlton, subsequent to stepping into the shoes of Guillory on those agreements, has performed all duties and obligations (if any) required of him under those agreements.

3. Defendant MAUI LOAN INC and its alter-egos have breached those agreements by refusing to pay principal, refusing to pay the balloon payment, refusing to pay interest, and refusing to pay penalties due in accordance with their duties and obligations pursuant to those agreements; and,

4. those breaches have damaged plaintiff in the sum of approximately $900,000 or such other amount as determined by jury at trial.

III. ACCOUNT STATED;

1. As shown in Exhibit 6 hereto, defendant MAUI LOAN INC. and its alter-egos, as borrower, paid eighty-three (83) monthly principal and interest payments in the sum of $1,341.09 per month at a rate of 5% per annum to Ms. Guillory from October 2009 until August 2016 (inclusive);

2. Pursuant to the written agreements between the parties attached hereto as Exhibits 1-3 the principal sum due was $145,000;

3. Pursuant to the written agreements between the parties attached hereto as Exhibits 1-3 the borrower, MAUI LOAN INC.

and its alter-egos, agreed to pay the principal sum, plus interest at a rate of 5% per annum, plus any penalties specified in those agreements.

## IV. ACCOUNTING;

1. In the alternative to other claims and causes of action specified at law, or by contract in the instant complaint, there is an equitable cause of action for an Accounting between the Plaintiff and defendants, and each of them, in that Ms. Guillory had loaned a sum certain of $145,000 to various defendants as of October 1, 2009, that Plaintiff Mr. Charlton stepped into the shoes of Ms. Guillory with respect to such indebtedness, and those defendants have not fully repaid the principal sums, accrued interested, nor penalties on account of such debt;

## V. ALTER EGO LIABILITY;

1.     For each cause of action enumerated herein, plaintiff claims that there is such unity of interest and ownership that the separate personalities of the corporation Maui Loan Inc, the individuals Richard Dan, Richard Dan d/b/a Kamaaina Loan, Richard Dan d/b/a MAUI PAWN SHOP, Carolyn Dan a/k/a Carolyn Printz and the corporation VALLEY ISLE LOAN LLC; that any liability of Maui Loan Inc under those causes of action should be assigned jointly and severally against each of the defendants Maui Loan Inc, Richard Dan, Richard Dan d/b/a

Kamaaina Loan, Richard Dan d/b/a MAUI PAWN SHOP, Carolyn Dan a/k/a Carolyn Printz and, VALLEY ISLE LOAN LLC.

2.     the failure to disregard the corporations would result in fraud or injustice;

## VI. FRAUD IN THE INDUCEMENT

1.     Defendant GREIG and the other defendants made false representations regarding the risk, safety and legal requirements of the securities agreements at issue in this complaint.

2.     At the time those false representations were made, defendants, and each of them, knew such representations were false.  Defendant CASE LOMBARDI, as a law corporation, is also charged with the full knowledge of the law and therefore (1) knew of the requirement to register the securities and present a full and truthful prospectus to any potential investors such as Ms. Guillory, (2) knew of the requirement to verify, for purposes of a private placement, that an investor in the shoes of Ms. Guillory was an "accredited investor" as such is defined by the SEC, and (3) knew they had a duty to transmit such prospectus and registration statement to Ms. Guillory.

3.     The defendants, and each of them, intended for Ms. Guillory to rely on those false representations and omissions to induce her to enter into those securities agreements, and

COMPLAINT FOR: VIOLATIONS OF SECURITIES ACT OF 1933-ET AL - 13

4.     Ms. Guillory did rely on those false representations of those defendants in making her decision to enter into those securities agreements.

### VII.  BREACH OF FIDUCIARY DUTY

1.     Ms. Guillory entrusted defendants GRIEG, FIRST HAWAIIAN BANK and the BANK OF HAWAII, and each of them, with a fiduciary trust and expectation of duty of loyalty that they would act in her best interests ahead of their own.

2.     By promoting the securities agreements at issue in this complaint, and recommending "off books" investments that were not insured deposits of those institutions, defendants breached such fiduciary trust.

3.     Ms. Guillory, and plaintiff Charlton, as her successor in interest, have been damaged by such breach of trust and uninsured "off books" investments to the extent that those investments have not performed as well as insured instruments offered by those institutions.

### V.   Relief Requested

I. A judgment against all defendants, and each of them, jointly and severally, in the sum of $330,957.53 plus accrued interest from the date of filing of this complaint, as provided by the Securities Act of 1933, less any payments already received as shown by the cause of action for "Accounting" and any other amounts subsequently

approved by this Court.

II. A finding by this Court that such there is such unity of interest and ownership that the separate personalities of the corporation Maui Loan Inc. and the individuals Richard Dan, Richard Dan d/b/a Kamaaina Loan, Richard Dan d/b/a MAUI PAWN SHOP, Carolyn Dan a/k/a Carolyn Printz no longer exists.

III. A judgment against defendants Maui Loan Inc., Richard Dan, Richard Dan d/b/a Kamaaina Loan, Richard Dan d/b/a MAUI PAWN SHOP, Carolyn Dan a/k/a Carolyn Printz, and each of them, jointly and severally, in the sum of $898,124.91 plus accrued penalties, other contract obligations, and interest from the date of filing of this complaint and any other amounts, such as costs and attorney's fees, subsequently approved by this Court pursuant to the loan securities documents at issue in this complaint.

**VI.   Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or

reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Dated this 29th Day of July 2022.

                                    /s/ James Paulett Charlton Jr
                                    Plaintiff, Pro Se
                                    James Paulett Charlton Jr