UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JAMES PAULETT CHARLTON, JR.,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>AGNES GREIG, FIRST HAWAIIAN BANK, A CORPORATION; BANK OF HAWAII, A CORPORATION; MAUI LOAN INC., A CORPORATION; RICHARD DAN, AN INDIVIDUAL; RICHARD DAN, A SOLE PROPRIETORSHIP; RICHARD DAN, A SOLE PROPRIETORSHIP; CAROLYN DAN, AN INDIVIDUAL; VALLEY ISLE LOAN LLC, A HAWAII CORPORATION; CASE LOMBARDI & PETTIT, A LAW CORPORATION; DOES 1-20, 92 N MARKET ST LLC,<br><br>　　　　　Defendants. | CIV. NO. 22-00344 LEK-RT |

**ORDER GRANTING: DEFENDANT GRIEG'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FILED ON AUGUST 29, 2022; THE MAUI LOAN DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS; <u>AND THE JOINDERS OF SIMPLE AGREEMENT IN THE MOTIONS</u>**

　　　　　On October 12, 2022, Defendant Agnes Greig ("Greig") filed a Motion for Summary Judgment or, in the Alternative, Motion to Dismiss Plaintiff's First Amended Complaint Filed on August 29, 2022 ("Greig Motion"),[1] and Defendants Maui Loan Inc., Richard Dan, Kamaaina Loan, and Maui Pawn Shop (collectively

---

[1] Greig notes that she is now known as Agnes Cannon. [Greig Motion, Mem. in Supp. at 1.]

"Maui Loan Defendants") filed a Motion for Judgment on the Pleadings ("Maui Loan Motion"). [Dkt. nos. 28, 30.] On November 9, 2022, pro se Plaintiff James Paulett Charlton, Jr. ("Charlton") filed a document that has been construed as his opposition to the Greig Motion ("Greig Opposition"), and on November 10, 2022, Charlton filed a document that has been construed as his opposition to the Maui Loan Motion ("Maui Loan Opposition"). [Dkt. nos. 36, 37.] The Maui Loan Defendants and Greig filed their reply memoranda on November 29, 2022 and December 1, 2022, respectively. [Dkt. nos. 39, 40.]

Also before the Court are: Maui Loan Inc.'s joinder of simple agreement in the Greig Motion, filed October 26, 2022 ("Maui Loan Inc.'s Greig Joinder"); [dkt. no. 33;] Defendant Bank of Hawaii's ("BOH") joinder of simple agreement in the Greig Motion, filed on January 4, 2023 ("BOH's Greig Joinder"); [dkt. no. 50;] and BOH's joinder of simple agreement in the Maui Loan Motion, also filed on January 4, 2023 ("BOH's Maui Loan Joinder" and all collectively "the Joinders"), [dkt. no. 51].

The Court finds these matters suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). For the reasons set forth below, the Grieg Motion, the Maui Loan Motion, and the Joinders are hereby granted. Judgment on the pleadings is granted in

2

favor of the Maui Loan Defendants as to Charlton's federal law claim without leave to amend, and Charlton's federal law claims against the other defendants are dismissed with prejudice. Further, Charlton's state law claims are dismissed because this Court declines to exercise supplemental jurisdiction over them.

## BACKGROUND

Charlton initiated this action on July 29, 2022.  See Complaint for: I) Violations of Securities Act of 1933, etc. ("Complaint"), filed 7/29/22 (dkt. no. 1).  The operative pleading is Charlton's First Amended Complaint for: I) Violations of Securities Act of 1933, etc. ("Amended Complaint"), filed on August 29, 2022.  [Dkt. no. 17.]  Charlton brings this action as the "successor in interest to all claims and causes of action formerly held by Ms. Nanette Guillory with respect to the various defendants."  Amended Complaint at pg. 1; see also id., Exh. 11 (Assignment, Grant, Sale, Quitclaim, Transfer, and Conveyance, dated 7/26/22, by Nanette Guillory to Charlton).  Charlton alleges Greig, acting as a private banker for Nanette Guillory ("Guillory") and Guillory's mother Roxanne Wall ("Wall"), directed them to make certain high-risk investments, including private loans to potential customers of

Greig's employers to whom the banks had declined to make loans.[2] [Amended Complaint at pgs. 4-7.]  Charlton asserts Guillory is "the original lender on the "loan securities documents" at issue in this [case.]"  [Id. at pg. 4.]  He also alleges Greig signed documents and endorsed checks on Guillory's and Wall's behalf, and Greig also used her access to Wall's safe deposit box to move documents and valuables from Wall to the box.  [Id. at pgs. 6-7.]  Charlton argues Guillory

> was deprived of her rights under the Securities Act of 1933 by the defendants, and each of them, failure to (a) register the securities, (b) provide a prospectus for those securities, and other representations made by GREIG in breach of her role as a officer and fiduciary of the bank defendants.

[Id. at pg. 8.]

According to documents attached to the Amended Complaint, at some point prior to October 1, 2009, Guillory made a number of loans to Maui Loan Inc., evidenced by separate promissory notes ("Old Notes"), with a total principal of $145,000.00.  See id., Exh. 3 (Mutual Settlement and Release Agreement, effective 10/1/09, between Maui Loan Inc. and

---

[2] Charlton alleges Greig was formerly employed by BOH, and Grieg is currently employed by Defendant First Hawaiian Bank ("FHB").  [Amended Complaint at pg. 1.]  During the period relevant to this case, "Greig represented herself as an employee and officer of, at first, defendant Bank of Hawaii, and later in the relationship with Ms. Guillory, as an employee and officer of defendant First Hawaiian Bank . . . ."  [Id. at pg. 5 (emphases omitted).]

4

Guillory ("Settlement Agreement")) at 1.  Guillory and Maui Loan Inc. agreed to consolidate the loans into a single loan evidenced by a new promissory note.  Maui Loan Inc. agreed to pay five percent interest per annum, amortized over twelve years.  Maui Loan was to make payments of $1,341.09 per month for six years, followed by a balloon payment of all remaining amounts due.  [Id.]  The Promissory Note that Maui Loan Inc. executed, dated October 1, 2009 ("Note"), is attached to the Amended Complaint as Exhibit 1.

Maui Loan Inc. also executed a Security Agreement, which, according to the Settlement Agreement, granted Guillory "a security interest in all of Maui Loan[ Inc.]'s furniture, fixtures, accounts receivables and inventory . . . ."  Amended Complaint, Exh. 3 (Settlement Agreement) at 1; see also id., Exh. 2 (Security Agreement, dated 10/1/09, between Maui Loan Inc. and Guillory); id., Exh. 4 (UCC Financing Statement by Maui Loan Inc., filed in the State of Hawai`i Bureau of Conveyances on 1/5/10).  The Settlement Agreement, Note, and Security Agreement will be referred to collectively as "the Loan Documents."

According to the Amended Complaint, Richard Dan ("Dan") is the owner and president of Maui Loan Inc.[3] [Amended Complaint at pg. 2.] He signed the Loan Documents as Maui Loan Inc.'s president. See id., Exh. 1 (Note) at 3; id., Exh. 2 (Security Agreement) at 4; id., Exh. 3 (Settlement Agreement) at 4. Dan also does business as Kamaaina Loan, a sole proprietorship ("Kamaaina Loan"), and Maui Pawn Shop ("Maui Pawn"), a sole proprietorship. See Amended Complaint at pg. 2.

Charlton alleges the following claims: violations of the Securities Act of 1933, 15 U.S.C. § 77a, *et seq.* ("Securities Act" and "Count I"); breach of contract ("Count II"); [id. at pgs. 9-11;] a claim titled "ACCOUNT STATED," which appears be a claim for specific performance of the Loan Documents ("Count III"); [id. at pgs. 11-12 (emphasis in original); id., Exhs. 1-3;] an accounting claim ("Count IV"); a claim seeking the imposition of alter ego liability ("Count V"); a fraud in the inducement claim ("Count VI"); and a breach of fiduciary duty claim ("Count VII"), [Amended Complaint at pgs. 12-15]. Charlton asserts there is federal question

---

[3] According to the Amended Complaint, Carolyn Dan, also known as Carolyn Printz ("Printz"), is another owner of Maui Loan Inc. Printz also owns and operates Valley Isle Loan LLC ("Valley Isle"), a Hawai`i corporation, and 92 N. Market St. LLC ("92 N. Market"), a Hawai`i corporation. [Amended Complaint at pgs. 2-3.] Printz, Valley Isle, and 92 N. Market filed an answer to the Amended Complaint on December 27, 2022. [Dkt. no. 47.]

jurisdiction, based on the Securities Act claim, and supplemental jurisdiction over the related state law claims. [Id. at pgs. 3-4.]

### I. Maui Loan Motion

The Maui Loan Defendants ask this Court to enter judgment on the pleadings in their favor as to all of Charlton's claims against them, pursuant to Fed. R. Civ. P. 12(c).  They contend this Court lacks subject matter jurisdiction over this case because Charlton's claims do not raise a federal question.  Even if jurisdiction exists, the Maui Loan Defendants argue Charlton does not have standing to bring any contractual claims based on the Loan Documents.  If Charlton is allowed to proceed with his claims, the Maui Loan Defendants contend that Maui Loan Inc. is the only proper defendant, and Dan, Kamaaina Loan, and Maui Pawn should be dismissed because they are not parties to the Loan Documents.

### II. Greig Motion

Greig argues Count I should be dismissed because: Charlton lacks standing to sue under Section 12 of the Securities Act; and, even if Charlton has standing, the claims are time-barred.  If Count I is dismissed, Greig argues this Court should decline to exercise supplemental jurisdiction over Charlton's state law claims against her.

7

**DISCUSSION**

I. **Securities Act**

Section 12(a) of the Securities Act states, in pertinent part:

> Any person who--
>
> > (1)  offers or sells a security in violation of section 77e of this title,[4] or
> >
> > (2)  offers or sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
>
> shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77l(a).

---

[4] 15 U.S.C. § 77e addresses, *inter alia*: the sale or delivery of an unregistered security; the distribution of a prospectus that does not meet the requirements set forth in 15 U.S.C. § 77j; and offering to buy or offering to sell an unregistered security.

Count I alleges the Note and the Security Agreement "are unregistered securities," [Amended Complaint at pg. 9,] and that various forms of fraud were committed in connection with the securities. Count I alleges none of the defendants is "registered or licensed as a securities broker," but the defendants "participated in a scheme to promote, create and sell those unregistered securities in a private placement to an unaccredited investor, Ms. Guillory." [Id. at pgs. 9-10.] Charlton argues the information prepared about the Note and Security Agreement and transmitted prior to Guillory's execution of the documents collectively constituted the prospectus for those securities,[5] but the prospectus did not contain "any facts necessary for any informed investment decision." See id. at pg. 10. Charlton argues these actions violated the Securities Act and "contributed directly to the loss of Ms. Guillory's investment with defendant Maui Loan Inc and its alter-egos." [Id. (emphasis omitted).]

For purposes of the Maui Loan Motion, this Court accepts the factual allegations of the Amended Complaint as true. See Gregg v. Hawai`i, Dep't of Pub. Safety, 870 F.3d 883,

---

[5] Charlton alleges the information was transmitted, using email and mail through the United States Post Office, by "various defendants, including Case Lobardi & Pettit a Law Corporation, Greig, and First Hawaiian Bank." [Amended Complaint at pg. 10 (emphasis omitted).] The Note and Security Agreement were also transmitted after they were executed. [Id.]

9

887 (9th Cir. 2017) ("A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." (citation and internal quotation marks omitted)). This Court also considers the exhibits to the Amended Complaint because they are incorporated by reference into the Amended Complaint. See Ryan v. Salisbury, CIV. NO. 18-00406 ACK-RT, 2019 WL 5269092, at *4 (D. Hawai`i Oct. 17, 2019) ("Judgment on the pleadings under Rule 12(c) is limited to material included in the pleadings, as well documents attached to the complaint, documents incorporated by reference in the complaint, and matters of judicial notice, unless the Court elects to convert the motion into one for summary judgment." (citing Yakima Valley Mem'l Hosp. v. Dep't of Health, 654 F.3d 919, 925 n.6 (9th Cir. 2011); United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003))).

Even taking all of the factual allegations of the Amended Complaint as true, the consolidated loan evidenced by the Note and the Security Agreement is a one-on-one transaction between Guillory as the lender and Maui Loan Inc. as the borrower. The Note and Security Agreement are not securities for purposes of the Securities Act. The Securities Act states "[t]he term 'security' means any note . . . [or] evidence of indebtedness . . . ." See 15 U.S.C. § 77b(a)(1). While this

10

language may appear to support Charlton's position that the Note and Security Agreement constitute securities, subsection (a) also states its definitions apply "unless the context otherwise requires." Cf. United Hous. Found., Inc. v. Forman, 421 U.S. 837, 848 (1975) (rejecting, in the interpretation of the Securities Act, "any suggestion that the present transaction, evidenced by the sale of shares called 'stock,' must be considered a security transaction simply because the statutory definition of a security includes the words 'any . . . stock[]'").

      Because the definition of "security" in the Securities Exchange Act of 1934 ("Securities Exchange Act") is "virtually identical" to the definition of "security" in the Securities Act, case law interpreting the Securities Exchange Act's definition is persuasive here. See Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc., 583 F.2d 426, 431 (9th Cir. 1978) (some citations omitted) (citing Tcherepnin v. Knight, 389 U.S. 332, 335-336, 88 S. Ct. 548, 19 L. Ed. 2d 564 (1967)). The Securities Exchange Act definition states, in pertinent part: "When used in this chapter, unless the context otherwise requires-- . . . . (10) The term "security" means any note . . . ." 15 U.S.C. § 78c(a). The United States Supreme Court has stated:

11

> The definition of "security" in the Securities Exchange Act of 1934 is quite broad. The Act was adopted to restore investors' confidence in the financial markets, and the term "security" was meant to include "the many types of instruments that in our commercial world fall within the ordinary concept of a security." H. R. Rep. No. 85, 73d Cong., 1st Sess., 11 (1933); quoted in United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 847–848 (1975). . . .
>
> The broad statutory definition is preceded, however, by the statement that the terms mentioned are not to be considered securities if "the context otherwise requires . . . ." Moreover, we are satisfied that Congress, in enacting the securities laws, did not intend to provide a broad federal remedy for all fraud. Great Western Bank & Trust v. Kotz, 532 F.2d 1252, 1253 (CA9 1976); Bellah v. First National Bank, 495 F.2d 1109, 1114 (CA5 1974).

Marine Bank v. Weaver, 455 U.S. 551, 555-56 (1982) (footnotes omitted). The Supreme Court noted that "Congress intended the securities laws to cover those instruments ordinarily and commonly considered to be securities in the commercial world," but the agreement at issue in that case was "not the type of instrument that comes to mind when the term 'security' is used and does not fall within 'the ordinary concept of a security.'" Id. at 559 (quoting Marine Bank, 455 U.S. at 556). Prior cases where the instrument was found to be a security "involved offers to a number of potential investors, not a private transaction . . . ." Id. at 559-60 (discussing SEC v. W.J. Howey Co., 328 U.S. 293, 295 (1946); SEC v. C.M. Joiner Leasing Corp., 320 U.S. 344, 346 (1943)). The instruments in

12

those cases "had equivalent values to most persons and could have been traded publicly." Id. at 560.  In contrast, in Marine Bank, no prospectus was distributed, the terms of the investment agreement were unique to the Weavers, and the investment "was not designed to be traded publicly." Id.  The Supreme Court held "this unique agreement, negotiated one-on-one by the parties, [was] not a security." Id. at 560 & n.10 (citing Great Western Bank & Trust v. Kotz, 532 F. 2d 1252, 1260-1262 (CA9 1976) (Wright, J., concurring) (unsecured note, the terms of which were negotiated face-to-face, given to a bank in return for a business loan, is not a security)).

In the instant case, Maui Loan Inc. and Guillory entered into a settlement agreement that included the consolidation of the Old Notes into the Note.  See Amended Complaint, Exh. 3 (Settlement Agreement).  There is no allegation in the Amended Complaint, nor is there any indication in the Loan Documents themselves, that this was an investment which could have been traded publicly or was actually offered to other investors.  Even viewing the Amended Complaint in the light most favorable to Charlton,[6] the loan evidenced by the Note

---

[6] When considering a motion for judgment on the pleadings, this Court "will construe the pleadings in the light most favorable to the nonmoving party."  See Ryan, 2019 WL 5269092, at *4 (some citations omitted) (citing Doyle v. Raley's Inc., 158 F.3d 1012, 1014 (9th Cir. 1998)).

13

and other Loan Documents was not the type of investment that the commercial world commonly considers to be a security. See Marine Bank, 455 U.S. at 559.  Instead, it was merely a private loan between Maui Loan Inc. and Guillory.  This Court therefore concludes, as a matter of law, that the agreement evidenced by the Note and other Loan Documents was not a security for purposes of the Securities Act.  Accord Mace Neufeld Prods., Inc. v. Orion Pictures Corp., 860 F.2d 944, 947 (9th Cir. 1988) ("The [Securities Exchange] Act was not intended to extend to ordinary, individually negotiated private commercial loan transactions." (citing Bronstein v. Bronstein, 407 F. Supp. 925, 930 (E.D. Pa. 1976))); Amfac Mortg., 583 F.2d at 434 ("A note given to a lender in the course of a commercial financing transaction is not a security within the meaning of the federal securities laws.  If we were to 'expand the reach of those acts to ordinary commercial loan transactions,' the purpose behind those laws would be distorted." (quoting Great Western Bank & Trust v. Kotz, 532 F.2d 1252, 1260 (9th Cir. 1976))).

Because the loan evidenced by the Note and other Loan Documents was not a security for purposes of the Securities Act, Charlton's claims asserting violations of the Securities Act in connection with the purported sale of the loan fail as a matter of law.  The Court therefore grants judgment on the pleadings in favor of the Maui Loan Defendants as to Charlton's claim against

14

in them in Count I. See Gregg, 870 F.3d at 887. Further, because the loan at issue in this case was not a security for purposes of the Securities Act, all of Charlton's claims in Count I against the other defendants also fail as a matter of law. The Grieg Motion is therefore granted, insofar as Charlton's claim against Grieg in Count I is dismissed, although on grounds other than those raised in the Grieg Motion.[7] The portions of Count I asserting claims against the other defendants are also dismissed because Charlton fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

In considering a motion for judgment on the pleadings, a district court has the discretion to grant leave to amend. See Lieblong v. Abella, 503 F. Supp. 3d 1011, 1021 (D. Hawai`i 2020) (citing Curry v. Baca, 497 F. Supp. 2d 1128, 1138 (C.D. Cal. 2007)). Leave to amend can be granted where it may be possible for the plaintiff to cure the defects in his claims by amendment. See, e.g., Handa v. Honda Aircraft Co., CIV. NO. 21-00141 LEK-WRP, 2022 WL 1212923, at *6 (D. Hawai`i Apr. 25, 2022) (granting judgment on the pleadings to the defendant as to the

---

[7] This Court makes no findings nor conclusions regarding the issues raised in the Grieg Motion regarding Count I, including, but not limited to, whether Charlton has standing to bring claims under the Securities Act and whether his claims are time-barred.

15

plaintiff's fraudulent inducement claim but granting the plaintiff leave to amend because the claim "could be saved by amendment"). In this case, however, the Court concludes that it would not be possible for Charlton to cure the defects in his Securities Act claim against the Maui Loan Defendants because, even if Charlton pleaded additional factual allegations, they would not change the nature of the loan between Guillory and Maui Loan Inc. The Court therefore declines to allow Charlton leave to amend his claim in Count I against the Maui Loan Defendants.

As to the portions of Count I that were dismissed, the Court notes that "[d]ismissal of a *pro se* complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007) (citation omitted). The Court concludes that it is absolutely clear that Charlton cannot cure the deficiencies in Count I by amendment. The dismissal of Charlton's claims in Count I against all defendants, other than the Maui Loan Defendants, is with prejudice. In other words, he will not be allowed to file a second amended complaint to try to cure the defects in those portions of Count I.

16

## II. <u>Supplemental Jurisdiction</u>

Count I is the only count in Charlton's Amended Complaint that asserts claims under federal law. Judgment on the pleadings as to Count I has been granted in favor of the Maui Loan Defendants, without leave to amend, and all other portions Count I have been dismissed with prejudice. Thus, there are no federal claims remaining in this case. This district court has stated:

> Courts may decline to exercise supplemental jurisdiction over a state-law claim if:
>
>> (1) the claim raises a novel or complex issue of State law,
>>
>> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>>
>> (3) **the district court has dismissed all claims over which it has original jurisdiction**, or
>>
>> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
>
> 28 U.S.C. § 1367(c). Courts declining to exercise supplemental jurisdiction, "must undertake a case-specific analysis to determine whether declining supplemental jurisdiction 'comports with the underlying objective of most sensibly accommodat[ing] the values of economy, convenience, fairness and comity. " <u>Bahrampour [v. Lampert]</u>, 356 F.3d [969,] 978 [(9th Cir. 2004)] (alteration in original) (citation omitted); <u>see</u> <u>City of Chicago v. Int'l Coll. of Surgeons</u>, 522 U.S. 156, 173, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997). When a "case in which all federal-law claims are eliminated before trial,

17

> the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (alteration in original) (internal quotation marks and citation omitted).

Dicks v. Off. of Elections, CIVIL NO. 22-00347 JAO-WRP, 2022 WL 3786808, at *7 (D. Hawai`i Aug. 30, 2022) (some alterations in Dicks) (emphasis added). "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) (some citations omitted) (citing 28 U.S.C. § 1367(c)).

The instant case is still in its early stages. The Rule 16 scheduling conference was held recently. See Minutes - EP: Telephonic Rule 16 Scheduling Conference, filed 5/16/23 (dkt. no. 64). The parties agreed to stay discovery until thirty days after this Court rules on all of the pending motions, including the Grieg Motion and the Maui Loan Motion. See id. at PageID.538. In light of the limited procedural history of this case in this district court, and because there are only state law claims remaining, this Court finds that the interests of "economy, convenience, fairness and comity" weigh against the exercise of supplemental jurisdiction. See Bahrampour, 356 F.3d at 978. Therefore, in the exercise of its

18

discretion, this Court declines to exercise supplemental jurisdiction over Charlton's state law claims.  The Maui Loan Motion and the Grieg Motion are granted, insofar as Counts II through VII are dismissed.

## **CONCLUSION**

For the foregoing reasons, Grieg's Motion for Summary Judgment or, in the Alternative, Motion to Dismiss Plaintiff's First Amended Complaint Filed on August 29, 2022 and the Maui Loan Defendants' Motion for Judgment on the Pleadings, both filed October 12, 2022, are HEREBY GRANTED, insofar as: judgment on the pleadings as to Count I is granted in favor of the Maui Loan Defendants; leave to amend is denied as to that portion of Count I; all remaining portions of Count I are dismissed; and Counts II through VII are dismissed because this Court declines to exercise supplemental jurisdiction.

In addition, Maui Loan Inc.'s joinder of simple agreement in the Grieg Motion, filed October 26, 2022, and BOH's joinders of simple agreement in the Grieg Motion and the Maui Loan Motion, both filed January 4, 2023, are GRANTED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 31, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JAMES PAULETT CHARLTON, JR. VS. AGNES GREIG, ET AL.; CV 22-00344 LEK-RT; ORDER GRANTING: DEFENDANT GRIEG'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FILED ON AUGUST 29, 2022; THE MAUI LOAN DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS;AND THE JOINDERS OF SIMPLE AGREEMENT IN THE MOTIONS**